UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| OAO ALFA BANK et al., <br><br> Plaintiffs, <br><br> v. <br><br> CENTER FOR PUBLIC INTEGRITY et al., <br><br> Defendants. | Civil Action No.  00-2208 (JDB) |

MEMORANDUM OPINION

Before the Court is defendants' motion for sanctions pursuant to Fed. R. Civ. P. 37(c)(2), which requests an award of expenses, primarily attorneys fees, based on plaintiffs' allegedly improper denial (in response to defendants' requests for admission) as to their public figure status for purposes of this defamation action.  Also pending is defendants' contested bill of costs seeking to recover $24,382.55 for costs associated with deposition transcripts and copying.  The Court addresses each of these matters in turn.

I.      Motion for Sanctions pursuant to Rule 37(c)(2)

Defendants served each of the plaintiffs -- OAO Alfa Bank, ZAO Alfa Eco, Pyotr Aven, and Mikhail Fridman -- with a request to admit that each was "a public figure for purposes of the application of the law of defamation to this action." Defs.' Mot. for Sanctions, Ex. 1.  Plaintiffs denied the requests for admission.  Id., Ex. 2.  Subsequently, the Court granted defendants' motion for summary judgment, concluding, among other things, that plaintiffs are limited public figures and thus, plaintiffs could prevail on their defamation claims only through proof, by clear and convincing evidence, of actual malice.  See OAO Alfa Bank v. Center for Public Integrity, 387 F. Supp. 2d 20, 42-48 (D.D.C. 2005).  Defendants now contend that sanctions are appropriate

because the matter of plaintiffs' limited public figure status has been established, and plaintiffs did not have a "reasonable ground to believe that it might prevail on the matter" within the meaning of Rule 37(c)(2).

The Court begins with the text of the rule:

> If a party fails to admit the genuineness of any document or the truth of any matter as requested under Rule 36, and if the party requesting the admissions thereafter proves the genuineness of the document or the truth of the matter, the requesting party may apply to the court for an order requiring the other party to pay the reasonable expenses incurred in making that proof, including reasonable attorney's fees.  The court shall make the order unless it finds that (A) the request was held objectionable pursuant to Rule 36(a), or (B) the admission sought was of no substantial importance, or (C) the party failing to admit had reasonable ground to believe that the party might prevail on the matter, or (D) there was other good reason for the failure to admit.

Fed. R. Civ. P. 37(c)(2).

Defendants have, of course, proven the "truth of the matter" addressed in the requests -- plaintiffs are limited public public figures -- and thus sanctions are required unless the Court finds that plaintiffs fall within one of the exceptions.  There is no dispute that the requests were not "held objectionable" under Rule 36(a), and the admission sought certainly was of "substantial importance" to the case.  Thus, the only issue is whether plaintiffs are covered by the remaining two exceptions -- that is, whether plaintiffs had "reasonable ground to believe that [they] might prevail on the matter" or "there was other good reason for the failure to admit."  In considering whether there was "other good reason for the failure to admit," the good faith actions of the respondent should be considered.  See Harolds Stores, Inc. v. Dillard Dep't Stores, Inc., 82 F.3d 1533, 1555 (10th Cir. 1996).

The Court finds that, looking at the totality of circumstances here, sanctions should not be awarded because there was "other good reason for the failure to admit"; thus, it does not consider

whether plaintiffs had "reasonable ground to believe it might prevail on the matter" under exception (D).[1]  Although plaintiffs invoke the latter exception, the arguments they raise focus on the problems with the requests as drafted and the subjective good faith basis of plaintiffs' responses -- grounds which relate more to whether there was "other good reason for the failure to admit."

      First, although the request was not held objectionable by the Court -- and indeed, plaintiffs did not raise objections in their responses -- the requests were nonetheless significantly flawed. Each request used very broad and ambiguous language, stating only "You are a public figure for purposes of the application of the law of defamation to this action."  Rule 36 does not authorize requests for admissions of law without relating the legal conclusion to the facts of the case.  See Fed. R. Civ. P. 36(a) (authorizing requests for admission "that relate to statements or opinions of fact or of the application of law to fact"); see also id. advisory committee's note ("The amended provision does not authorize requests for admissions of law unrelated to the facts of the case") (emphasis added).  Certainly, limited public figure status involves the application of law to fact and, thus, as defendants correctly point out, courts have held that a request for admission on this subject may be appropriate.  See Foretich v. Chung, 151 F.R.D. 3, 4 (D.D.C. 1993) (denying defendant's motion for order requiring plaintiff to admit his public figure status, but noting that "[u]nder Rule 37(c), the defendants might eventually be able to recover the costs of proving that the plaintiff is a public figure"); Newton v. Nat'l Broad. Co., Inc., 930 F.3d 662, 667, 668 n.6 (9th Cir. 1990) (noting that district court had imposed sanctions on a well-known celebrity for

---

[1] Plaintiffs' limited public figure status was supported by an abundance of evidence and decided under well-established legal standards.  387 F. Supp. 2d at 42-48.  Thus, it makes sense to consider whether plaintiffs' responses were made in good faith and hence establish (alone, or in combination with other circumstances) "other good reason for the failure to admit."

requiring his public figure status to be proved).  However, the request at issue did not specify any "facts of the case," other than a broad reference to "this action."  Thus, although the request was not "held objectionable pursuant to Rule 36(a)," it is doubtful that, if challenged, the request would have been sustained.

But even if the requests could fairly be characterized under Rule 36(a) as "relat[ing] to . . . the application of law to fact," the ambiguity as to the so-called facts referenced would present a significant problem.  The legal standards governing whether a person is a "limited public figure" are dependent on the particular facts of the case.  As the Court explained in the summary judgment decision:

> [A limited public figure is] an individual who "voluntarily injects himself or is drawn into a *particular public controversy* and thereby becomes a public figure *for a limited range of issues*."  The D.C. Circuit has set out a three-part inquiry to determine whether a plaintiff is a limited public figure.  First, the court must isolate an existing "public controversy" at issue, because the scope of the controversy in which the plaintiff involves himself defines the bounds of the public presence.  Second, the court should assess whether the plaintiffs have achieved more than a trivial or tangential prominence in the debate.  Finally, the "alleged defamation must have been germane to the plaintiff's participation in the controversy."

OAO Alfa Bank, 387 F. Supp. 2d at 42 (citations omitted) (emphasis added).  Without relating public figure status to a particular public controversy, the request for admission is difficult to interpret.  Plaintiffs assert that they believed the controversy here was the Sidanco bankruptcy and the effort by TNK (Tyumen Oil Company) to obtain a loan from the United States Export-Import Bank, and they were not public figures in relation to that controversy because their involvement was limited to responding to allegations of criminality.  Pls.' Opp. at 6 n.4.  The Court did not adopt plaintiffs' position, and instead ultimately agreed with defendants that the public controversy at issue should be defined more broadly as the rise of the oligarchs and the decline of

the Russian economy into a "criminal syndicalist state." 387 F. Supp. 2d at 43. However, there is no reason to doubt that plaintiffs in good faith believed that the public controversy, and their role in it, could be defined more narrowly. Defendants' failure to specify a particular public controversy for purposes of their requests for admissions makes plaintiffs' denials understandable even if ultimately unavailing once the relevant public controversy was identified.

The Court also considers the complex nature of the limited public figure inquiry in this action, and the need to consult a broad body of case law. As one court has noted, it is doubtful "that all cases considering the concept of public figure have applied it in the same way." See Schultz v. Reader's Digest Ass'n, Inc., 1977 U.S. Dist. LEXIS 12563, *15-16 (E.D. Mich. 1977). Plaintiffs' expert witness, Joel Kaplan, a professor of investigative journalism, testified that, although in his own view plaintiffs should be considered limited public figures, "you can argue both ways." Kaplan Depo. at 407 (Defs.' Mot. for Sanctions, Decl. of Michael D. Sullivan, Ex. 10). Thus, the vagueness of the general requests to admit public figure status may be objectionable on that basis. Id.

Plaintiffs' failure to make these objections in their original responses to the requests for admissions is certainly not laudable. And, standing alone, untimely objections would not be an adequate basis for denying a request for sanctions under Rule 37(c)(2). However, in the aggregate, considering the deficiencies in the requests for admissions, the importance of the factual characterization of the public controversy in determining limited public figure status, the lack of an adequate description of that matter in the requests for admission, and plaintiffs' good faith belief in the denials made, the Court finds that there was "other good reason for the failure to admit" under Rule 37(c)(2).

**II.     Bill of Costs**

Defendants submitted a bill of costs seeking to recover $24,382.55 for deposition transcripts and copying costs, pursuant to Fed. R. Civ. P. 54(d) and Local Civil Rule 54.1(d). Defendants later reduced the amount sought by $139.59 to account for the non-taxability of costs for one hearing transcript, bringing the claim at issue to $24,242.96. Plaintiffs contend that no costs should be recoverable on the ground that such an award would be inequitable under the circumstances presented, alleging that defendants engaged in a pattern of excessive and abusive discovery practices and emphasizing the Court's finding that defendants were not "without fault" in creating the circumstances that gave rise to this lawsuit. Plaintiffs also contend that certain costs are inappropriate or not adequately documented.

The Court concludes that defendants are entitled to most of the requested costs -- $23,090.62 -- and reduces the amount only to account for the non-recoverable items enumerated below. Having brought this defamation action and denying their public figure status, plaintiffs opened the door to the full extent of discovery authorized by the Federal Rules of Civil Procedure and the orders of this Court. Discovery was conducted zealously, but this characterization applies to all of the parties, not only defendants. The Court cannot say on this record that defendants' conduct was "vexatious," especially in the context of the conduct of the overall scope of discovery, or that the conduct otherwise reached a level that would overcome the presumption favoring an award of costs to the prevailing party. See Baez v. United States Dep't of Justice, 684 F.2d 999, 1004 (D.C. Cir. 1982) (en banc) (per curiam) (emphasizing that the presumption that a prevailing party is entitled to costs is a "powerful" one, and that "trial judges have rarely denied costs to a prevailing party whose conduct has not been vexatious when the losing party has been capable of paying such costs"). "Taxation of costs merely represents the *fair price* of

unsuccessful litigation." Id, at 1003 (emphasis in original). The fact that defendants' conduct contributed to the events giving rise to this litigation does not alter the fact that they are the prevailing party. It certainly was not so culpable as to reverse the presumption favoring an award of costs.

Thus, the Court turns to the issue of the amount of costs to be awarded. Most of the costs sought are for deposition transcripts, which are recoverable under Local Civil Rule 54.1(d)(6).[2] Although plaintiffs initially protested the costs as unsubstantiated, defendants have since then produced invoices for all deposition transcripts. See Defs.' Reply Br., Ex. A. The Court has reviewed the invoices and determined that the cost of the transcript for each deposition listed in the bill of costs is supported by an invoice. Plaintiffs next contends that the depositions of five witnesses (Maxim Topper, Alexander Gafin, Alexander Fain, Dmitry Sergeev, and Sergei Bakumov) are not taxable because they were not relied upon in the summary judgment briefing. As defendants point out, however, each of those depositions was relied upon in declarations submitted in support of the summary judgment briefs (see Defs.' Reply Br. at 3-4), and the Court's review of the record confirms this.

The parties do not address whether court reporter fees for features requested for the convenience of counsel -- minuscript, ASCII copies, indices, and diskettes, for example -- are recoverable. There is a broad consensus that they are not. See, e.g., Harkins v. Riverboat Servs. Inc., 286 F. Supp. 2d 976, 980-81 (N.D. Ill. 2003); Auto-Wax Co., Inc. v. Mark V Prods., Inc., 2002 WL 265091, at *5-*6 (N.D. Tex. 2002); Scallet v. Rosenblum, 176 F.R.D. 522, 526 (W.D.

---

[2] Local Civil Rule 54.1(d)(6) provides that taxable costs include "the costs, at the reporter's standard rate, of the original and one copy of any deposition noticed by the prevailing party, and of one copy of any deposition noticed by any other party, if the deposition was used on the record, at a hearing or trial."

Va. 1997). Additionally, costs associated with delivery, shipping, and handling are not recoverable because they are considered part of the cost of operating a law firm. See, e.g., El-Fadl v. Central Bank of Jordan, 163 F.R.D. 389, 390 (D.D.C. 1995); Harkins, 286 F. Supp. 2d at 981; Auto-Wax Co., 2002 WL 265091, at *5; Scallet, 176 F.R.D. at 527. On the other hand, the costs of exhibits attached to the deposition are recoverable because they are essential to the deposition transcript. See Harkins, 286 F. Supp. 2d at 980. Consistent with these limitations, which are typically applied in this district, the costs for the original and one copy of deposition transcripts and exhibits -- excluding costs of delivery and features added for the convenience of counsel -- will be taxed as follows:

| Deposition Witness and Date | Transcript Costs | Exhibits |
|---|---:|---:|
| Mikhail Fridman (2/5/2002) | 991.25 | 173.00 |
| Mikhail Fridman (2/6/2002) | 789.75 | 124.00 |
| Knut Royce (3/28/2002) | 430.00 | 5.00 |
| Knut Royce (3/29/2002) | 488.00 | 50.50 |
| Maxim Topper (4/3/2002) | 773.50 | 11.50 |
| Alexandr Tolchinsky (4/8/2002) | 838.50 | 92.50 |
| Alexandr Fain (4/10/2002) | 520.00 | 3.00 |
| Alexandr Fain (4/11/2002) | 500.50 | 8.50 |
| Alexandr Fain (4/12/2002) | 383.50 | 13.00 |
| Charles Lewis (5/16/2002) | 464.40 | 16.25 |
| Charles Lewis (5/17/2002) | 311.75 | 11.25 |
| Pyotr Aven (6/4/2002) | 642.75 | -- |
| Pyotr Aven (6/5/2002) | 825.50 | 62.40 |
| Alexander Gafin (6/6/2002) | 474.50 | 30.90 |
| Alexander Gafin (6/7/2002) | 286.00 | 9.00 |

| | | |
|---|---:|---:|
| Rory Davenport (6/11/2002) | 760.50 | -- |
| Andrew Katell (6/12/2002) | 580.75 | -- |
| Dmitry Sergeev (7/9/2002) | 736.75 | -- |
| Alexander Fain (7/12/2002) | 422.50 | 10.50 |
| Dmitry Sergeev (7/16/2002) | 422.50 | 30.00 |
| German Khan (7/17/2002) | 710.50 | -- |
| German Khan (7/18/2002) | 451.75 | -- |
| Richard Prince (7/26/2002) | 367.75 | 34.00 |
| Jonathan Winer (9/19/2002) | 532.00 | 48.75 |
| Igor Baranovsky (9/24/2002) | 344.50 | -- |
| Igor Baranovsky (9/25/2002) | 243.75 | 10.80 |
| Sergei Bakumov (9/25/2002) | 331.50 | -- |
| Sergei Bakumov (9/26/2002) | 328.25 | 3.00 |
| Jonathan Winer (10/2/2002) | 134.90 | 8.00 |
| Jonathan Sanders (10/29/2002) | 741.25 | -- |
| Peter Smith (10/31/2002) | 233.70 | 6.75 |
| Jonathan Sanders (11/12/2002) | 506.00 | -- |
| Richard Palmer (4/25/2003) | 688.55 | 6.00 |
| Knut Royce (7/11/2003) | 75.85 | -- |
| John Forbes (1/27/2004) | 500.20 | 22.25 |
| Joel Kaplan (2/9/2004) | 1,225.90 | -- |
| Joel Kaplan (2/20/2004) | 623.20 | -- |
| TOTALS | 19,682.45 | 790.85 |

The remainder of the costs -- $2,617.32 -- is claimed for one copy of summary judgment exhibits and supporting papers, one electronic copy of the exhibits filed with the Clerk (Local Civil Rule 54.1(d)(8)), and the service copy of exhibits (Local Civil Rule 54.1(d)(9)). Plaintiffs

raised the issue whether these costs included internal law firm expenses or professional fees for legal staff time spent on the work, and defendants have submitted the invoice showing that the costs consist only of the fees charged by a third-party vendor.  See Defs.' Reply Br., Ex. C.  The copying costs are thus also awarded.   This brings the costs awarded to $23,090.62 -- the sum of $19,682.45, $790.85, and $2,617.32.

## CONCLUSION

For the foregoing reasons, the Court denies defendants' motion for sanctions pursuant to Fed. R. Civ. P. 37(c)(2).  The Court grants in part and denies in part the request set forth in defendants' bill of costs.  Costs will be taxed against plaintiffs in the amount of $23,090.62.  A separate order has been issued on this date.

/s/
JOHN D. BATES
United States District Judge

Date:  May 12, 2006

Copies to:

Daniel Joseph
Jonathan S. Spaeth
Tobias Eli Zimmerman
AKIN, GUMP, STRAUSS, HAUER & FELD, L.L.P.
1333 New Hampshire Avenue, NW, Suite 400
Washington, DC 20036-1511
Email: jspaeth@akingump.com

Peter John Loughlin
HUNTON & WILLIAMS
1900 K Street, NW
Washington, DC 20006
Email: ploughlin@hunton.com

Elizabeth C. Koch
Michael Dennis Sullivan
Chad R. Bowman
LEVINE SULLIVAN KOCH & SCHULZ, LLP
1050 17th Street, NW, Suite 800
Washington, DC 20036
Email: msullivan@lsklaw.com